## CONSTITUTIONALITY OF THE COUNTY SALARY ACT.

Circuit Court of Montgomery County.

JOHN L. THEOBALD v. THE STATE OF OHIO, EX REL.

Decided, July, 1907.

*Constitutional Law—Office and Officer—Who are Officers—Definition of the Word "Salary"—Change of Compensation during Term of Office Law Regulating Salaries to be Paid to County Officers.*
*—Legislative Power—What Constitutes Uniform Operation of a*

1. An "officer," in the sense in which the word is used in the Constitution of Ohio, is an individual who takes the oath of office and becomes responsible to the public for his own official acts and those of his subordinates.
2. It is competent for the Legislature to fix the salaries of county officers, leaving it to the county commissioners of the several counties to fix the sum to be paid to deputies, assistants, bookkeepers, clerks and other employes.
3. A salary is a determined and stipulated sum to be paid for a fixed period.  Officers receiving their compensation under a fee system

are not salaried officers, and a change in the method of compensation from fees to a salary is not a change which "affects the salary of any officer during .his existing term."

4. An act providing that the salaries of county officers shall be fixed under a rule based on population does not fail of uniform operation throughout the state.

5. The act of March 22, 1906 (98 O. L., 89), is not in contravention of Article II, Sections 20 or 26 of the Constitution of Ohio, and is a valid enactment.

SMITH, J. (sitting in place of DUSTIN, J.) ; WILSON J., concurs in a separate opinion; SULLIVAN, J., concurs in both opinions.

The original action was brought by the State of Ohio, by Edward T. Hall, a tax-payer, against John L. Theobald, recorder of Montgomery county, Ohio, to recover from him moneys received from January 1, 1907, to March 31, 1907, as fees of his office, which sum he refused to pay into the county treasury as public money belonging to said county, under Section 6 of an act passed March 22, 1906, entitled, "An act to fix salaries of probate judges, county auditors, county treasurers, county recorders, clerks of the court of common pleas and sheriffs, and to provide for the employment and compensation of the clerks, deputies and assistants" (98 O. L., 89). It is claimed by said defendant, that the law requiring such payment by him is unconstitutional.

To this petition a demurrer was filed on behalf of the defendant, which was overruled by the trial court, and judgment rendered thereon, to reverse which judgment this cause is brought to this court.

It is claimed on behalf of the plaintiff in error that the act in question is unconstitutional, because—

1st. It contravenes Article II, Section 20 of the Constitution, which provides: "The General Assembly in cases not provided for in this Constitution shall fix the term of office and compensation of all officers, but no change therein shall affect the salary of any officer during his existing term, unless the office be abolished"; and

2d. That said act contravenes Article II, Section 26 of the Constitution, which provides, that "All laws of a general nature shall have a uniform operation throughout the state."

Upon the first contention we are of the opinion that Article II, Section 20 of the Constitution is not infringed by this act. The act in question makes it incumbent upon the Legislature to fix compensation of all officers, and as this term "officers" is used in the Constitution, we are satisfied that "deputies, assistants, book-keepers, clerks and other employes," are not "officers" as contemplated in the Constitution. An officer is one who is elected or appointed to an office in the state, and the Constitution recognizes that no person can be elected or appointed to an office in the state unless he possesses the qualifications of an elector, and as the subordinates might all hold their positions without being electors, then in the constitutional sense of the word "officer" they would not be such, and the "officer" in question is the individual who takes the oath of office and is responsible for his official acts as well as those of his various employes.

It is therefore within the purview of the Constitution to allow the Legislature to direct the county commissioners to fix the sum to be paid for the compensation of all "deputies, assistants, book-keepers, clerks and other employes" of said "officer," leaving it to the Legislature to fix the compensation or salary of the "officer" himself.

Nor do we think the law is unconstitutional because it is claimed it contravenes the second clause of Article II, Section 20 of the Constitution, which provides: "That no change therein shall affect the salary of any officer during his existing term, unless the office be abolished."

Heretofore the various officers mentioned in this act received their compensation under what was known as the fee system, but it is evident that fees can not be construed as a salary, which is a determined, stipulated sum for a fixed period, and an examination of the debates of the Ohio Convention of 1851, Vol. 1, page 233, reported by J. V. Smith, official reporter, shows that the convention recognized a distinction when this clause was up for debate between an "officer" receiving fees and one receiving compensation by way of salary. See, also, *Thompson* v. *Phillips*, 12 O. S., 617; *Gobrecht* v. *Cincinnati*, 51 O. S., 68.

The "officers" mentioned in the act were not upon a salary,

but were paid their compensation under certain rules prescribed by the Legislature.

As to the second claim that said act is in violation of Article II, Section 26, that "All laws of a general nature should have uniform operation throughout the state," we are of opinion that the act does have uniform operation throughout the state. The Legislature simply prescribes the rule by which compensation should be had in various counties. This article in the Constitution does not mean that each officer in each county should receive the same amount of money as salary, but simply that the rules of compensation shall be uniform; and the Legislature having seen fit to base this rule upon population, the exercise of that rule through the various counties of the state must of itself in its action.be uniform. The reason of this is, that the basis of operation is the same, and the result attained by the operation of the rule is the same, although the amount of money in dollars and cents may be different. See *Cricket* v. *The State,* 18 O. S., 79.

So long as the rule upon which compensation is based is unifrom throughout the state, it matters not whether in one county of the state the recorder receives more by reason of the increased population, than a recorder in another county receives less by reason of a less population. The compensation belongs to the officer under the act for his services. The fact that there is a limit upon the annual salary, that it shall not exceed a certain fixed sum, does not change the uniformity of the operation of the law, as this also applies to every county in the state.

We are therefore of opinion that there is no error in the judgment rendered below, and the same will be affirmed.


WILSON, J. (concurring in the opinion of SMITH, J.)

As to the purpose of the law:  Prior to the enforcement of this act, county officers were paid by fees which they were permitted to charge the public for the performance of their duties.  Necessarily these fees were uniform throughout the state, as one citizen could not be charged more than another for the performance of the same public duty.  The consequence was that a

fee system which would support the offices in a small county afforded an exorbitant compensation to the officers in a large county. It was to remedy this evil more than any other that the act under review was passed.

In the opinion of the Legislature the services of the officers in the larger counties were not commensurate with the fees they were permitted to charge and collect. The policy is now, as it was before, to support the offices by fees charged to those demanding the services, and because the existing fee system affords but a meager support to the offices in the smaller counties, the fees were not reduced. The principal purpose of the act is to divert the excess in the larger counties over and above a fair compensation for services from the officers to the county general fund.

As to the unequal operation of the law: It should not be said that the services of an officer must be valued by the standard of fees alone. The larger duties of the offices are common to all the counties. They must be kept open for business, requiring the officers' time; the same reports must be made by all; the same system of bookkeeping must obtain in all; the trust imposed upon the officer is alike in kind, if not in degree. The multiplied fees in the larger counties principally entail more bookkeeping and for this the law in question undertakes to make compensation independently of the officers' salaries. Of course there is increased responsibility and enhancement of the trust in the larger counties, calling for increased attention and ability in office; but in the opinion of the Legislature the graded salary is a corresponding compensation.

The salaries are not so unequal under the law as to make unreasonable classification. The glaring inequalities enumerated by counsel are based upon a wrong construction of the statute; as for instance, the salary of the auditor in Auglaize county, estimated on a popualtion of 31,192, is $2,530, not $2,475, and of the auditor in Brown county, based on a population of 28,237, is $2,345, not $1,500, as stated by counsel. The salaries of the same officer in Allen (47,976) and Miami (43,105) are respectively $3,390 and $3,190; and so, correspondingly in all the

other counties until the maximum of $6,000 under the law is reached.

In order that the officer may be compensated for each full thousand at the given rate in any fifteen thousand, it is not meant, as conceived by counsel, that the fifteen thousand must be full before he can be allowed the rate per full thousand. Under this interpretation of the law the salaries approach uniformity and equality in a remarkable degree.

As to the proposition that the act authorizes the board of county commissioners to fix the compensation of the officers when it fixes the aggregate to be paid his subordinates for assisting to perform the duties of his office: The Legislature takes absolute control and makes full and final disposition of the entire funds arising from fees in all of the offices, and this it may do. It prescribes how much shall be paid therefrom to the officer; how much to deputies, assistants, bookkeepers and clerks, and transfers the residue, if any, to the county general fund.

In contemplation of the act, the fees no longer attach to the officer, but to the office, and to the extent they are not needed to support the office they are devoted to the general good.

It can not be said that the officer is entitled to claim the fees as perquisites belonging to him by virtue of his office. The Legislature has always bestowed or denied them at pleasure. Nor can it be claimed in reason that it intended to make an appropriation to the officer as part of his compensation, when it authorized the board of county commissioners to fix the compensation, in the aggregate, of deputies, assistants, bookkeepers and clerks. The law expressly negatives such intent, when it makes it a crime for the officer, directly or indirectly to receive or appropriate any part of the allowance to his own use and benefit. It would be an anomaly to charge an officer with a crime for receiving his own.

The law recognizes the necessity for an additional working force in some of the offices of some of the counties. The existence of the necessity and its extent are questions of fact local in their character, and should therefore be referred to some local tribunal for determination.

The Legislature has conferred upon the board of county commissioners in each county the power to judicially determine these

questions.   The selection of the tribunal must be left to its wisdom.   If, under the law, an officer should make application to the board for assistance in the prescribed way, and be refused, then should he be physically unable himself to perform all the duties of the office because of their magnitude, the default would be not his, but that of the board.   It must act with legal, not arbitrary, discretion, in the bestowal or refusal of the fund.

The public have a right to expect and demand a reasonable and proper regard, both by the officer and the board, for the amount of labor necessary to be performed in each office.

The aggregate sums allowed in the various counties are not required, or expected, to be uniform.   As is said by counsel, they should be governed by environments—cost of living, the prevailing wage and the like.   It is to the interest of the officer, and the public as well, that the compensation should be no greater than the wages paid for like services in the particular community to be served, and this may be as variant as the judgment of the boards in the different counties.   It must not be overlooked that the officer fixes the compensation of each particular employe, as well as the number of employes..   With that the board has nothing to do, save that it may limit the aggregate that may be thus expended.   If not left to it, to whom should be left the determination of the amount?   Manifestly the Legislature could not determine it.   If left to the officer the tendency would be to expend the whole of the fee fund in this way, defeating the purpose of the law.

I am of the opinion, therefore, that the act does not violate either Section 20 or Section 26 of Article II of the Constitution, and the judgment should be affirmed.